UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DWAIN GAINES,<br><br>          Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | Case No. 13-CV-2157 |

## OPINION

On July 8, 2013, Petitioner, Dwain Gaines, filed a pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1). On August 6, 2013, the Government filed its Response to Petitioner's Motion (#3). On December 2, 2013, Petitioner filed his Reply (#6).

This court has carefully and thoroughly reviewed the arguments of the parties and the documents provided. This court has also reviewed the record in Petitioner's criminal case. Following this careful consideration, Petitioner's pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1) is DENIED.

## FACTS

On March 31, 2011, agents of the Kankakee County Major Crimes Task Force (MCTF) executed a search warrant at a residence in Pembroke Township, Illinois, where a confidential informant (CI) had seen Petitioner possessing firearms and possessing and selling cocaine. During the search of the residence, MCTF agents found a loaded .45 caliber pistol.

On May 5, 2011, MCTF agents executed a search warrant at Petitioner's residence located in Momence, Illinois. A CI had observed Petitioner possessing and selling crack

cocaine inside that mobile home trailer. During the search of the residence, MCTF agents found a plastic baggie containing 96.8 grams of crack cocaine in a bathroom. Agents also found a plastic baggie containing 102.7 grams of crack cocaine, two baggies containing 5.7 grams of crack cocaine, a black digital scale, and a loaded .38 caliber revolver (which had moved in interstate commerce), plus additional .38 caliber ammunition, all on top of a china cabinet in the kitchen.

While MCTF agents executed the search warrant, other agents observed Petitioner driving by his residence and arrested him. On May 6, 2011, around 7:29 a.m., MCTF Special Agent Russell Belcher met with Petitioner at the Jerome Combs Detention Center in Kankakee, Illinois. Petitioner agreed in writing to have the interview recorded. Agent Belcher read Petitioner warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), from a preprinted Kankakee County Sheriff's Police Department form. Petitioner initialed the form, indicating he was aware of each of his rights, and then signed the form, indicating that he wished to waive his rights and give a voluntary statement to Agent Belcher.

While being videotaped, Petitioner admitted that he had about seven ounces of crack cocaine in his residence, including the cocaine on top of the china cabinet and in the bathroom. He admitted that he had been cooking powder cocaine into crack cocaine at the searched residence and then selling the crack cocaine. Petitioner stated that he sold three grams for $100, and he made a couple of sales a day, on average. He also admitted that he was holding the loaded .38 caliber revolver for a friend and had it for protection. He elaborated that he had recently carried the .45 caliber pistol seized on March 31, 2011,

in his waistband. Prior to May 5, 2011, Petitioner had at least four prior felony convictions punishable by a term of imprisonment of more than one year.

In Case No. 11-CR-20032, Petitioner was charged by indictment with possession of 28 grams or more of cocaine base ("crack") with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iii) (Count 1), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 2), and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (Count 3). Attorney John C. Taylor of the Federal Public Defender's office was appointed to represent Petitioner.

On January 24, 2012, Petitioner, through counsel, filed a Motion to Suppress his statements. Petitioner argued that the statements were: (1) made without proper *Miranda* admonitions; (2) made under coercive circumstances; and (3) made as a result of Petitioner's diminished intellectual capacity. The Government opposed the Motion and this court scheduled an evidentiary hearing for February 27, 2012. However, rather than proceed with the Motion, Petitioner chose to accept responsibility and entered an open plea of guilty to all three counts of the indictment on February 21, 2012.

At the change of plea hearing, held before United States Magistrate Judge David G. Bernthal, Petitioner was administered an oath and swore to tell the truth. Petitioner stated that he had enough time to discuss his case with his attorney and was satisfied with his attorney's representation. Judge Bernthal engaged in a lengthy colloquy with Petitioner regarding all of the rights he was giving up by pleading guilty. Petitioner stated that he did not have any questions regarding these rights and still wanted to proceed to a

3

change of plea. Judge Bernthal also carefully explained the elements of the offenses to which Petitioner was pleading guilty and the potential penalties for each offense. Petitioner stated that he did not have any questions. Eugene Miller, the assistant United States Attorney prosecuting the case, provided a lengthy factual basis for the guilty plea. As part of the factual basis, Miller stated that the agents executed a search warrant at Petitioner's residence on May 5, 2011, and, during the search of that residence, the agents found approximately 96.8 grams of cocaine base (crack) in a bathroom. Miller also stated that the agents found a plastic baggy containing 102.7 grams of cocaine base (crack), two baggies containing 5.7 grams of cocaine base (crack), a black digital scale, a loaded Colt, Model Police Special, .38 caliber revolver, and .38 ammunition, all hidden on top of a china cabinet in the kitchen. Miller also stated that Petitioner made videotaped statements after waiving his *Miranda* rights and agreeing to be videotaped.

Judge Bernthal then engaged in the following colloquy with Petitioner:

> Q   I'll just ask a couple questions about [the factual basis]. What it looks like, what it sounded like when Mr. Miller recited it, is, is in May of last year you had a quantity of, of crack cocaine in your residence. You sold some of that before the search and the arrest was there. Had it not been for the search, you would have continued to process and sell it on your timetable, I guess I'd say.
>
> Is that accurate?
>
> A   Yes.

Judge Bernthal went on to discuss the other portions of the factual basis for the plea and concluded that "there would be enough evidence here to support the plea." Judge Bernthal also concluded that Petitioner understood "the charges, the penalties, his rights, and understands that he's giving up those rights by pleading guilty." Judge Bernthal stated that he believed Petitioner was doing this voluntarily and had "not been threatened or coerced, tricked, or promised some incentive to get him to plead guilty." Judge Bernthal accepted the guilty plea and entered a Report and Recommendation recommending that this court enter judgment on the plea. Judge Bernthal also stated that he was going to go ahead and vacate the hearing on the Motion to Suppress and set the case for sentencing. This court subsequently entered an Order approving the Report and Recommendation.

On March 19, 2012, Petitioner, through counsel, filed a Motion to appoint an expert to conduct a psychiatric examination. This court granted the Motion. Following the examination and the filing of a Psychiatric Report, this court held a hearing and determined that Petitioner was competent to proceed to sentencing.

On September 14, 2012, this court conducted a sentencing hearing. The Presentence Investigation Report (PSR) stated that Petitioner was a career offender based upon his prior felony convictions. As a career offender, Petitioner faced an advisory guideline sentence of 262 to 327 months for Count 1, plus a mandatory 60 month consecutive sentence for Count 2. This court sentenced Petitioner to a below guidelines sentence of 240 months on Count 1, a concurrent sentence of 120 months on Count 3, and

a mandatory minimum consecutive sentence of 60 months on Count 2, for a total sentence of 300 months.

Petitioner filed a Notice of Appeal. Petitioner's appellate counsel filed a motion to withdraw because there were no non-frivolous issues to raise. Petitioner did not contest his appellate counsel's motion. On February 25, 2013, the Seventh Circuit entered an order which granted counsel's motion to withdraw and dismissed the appeal, agreeing with counsel that the appeal was frivolous. The Seventh Circuit's mandate issued on March 19, 2013.

ANALYSIS

On July 8, 2013, Petitioner filed his Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (#1). Petitioner raised one claim: that his trial counsel was ineffective because he failed to follow through with the Motion to Suppress his statements. Petitioner argued that his counsel allowed him to plead guilty just six days prior to the scheduled hearing on his Motion to Suppress. Petitioner contended that his counsel should have argued that his arrest and questioning were improper under *Michigan v. Summers*, 452 U.S. 692 (1981) and *Bailey v. United States*, 133 S. Ct 1031 (2013).

On August 6, 2013, the Government filed its Response (#3). The Government argued that Petitioner's Motion under § 2255 is without merit because Petitioner made the decision to plead guilty and because there was no chance of Petitioner prevailing on the Motion to Suppress. The Government contended that *Michigan* and *Bailey* have no application to Petitioner's case because Petitioner was arrested as he drove by his trailer,

thus satisfying the *Bailey* requirement that the detainee be in the immediate vicinity of the searched premises.

Petitioner was allowed an extension of time to file a Reply and filed his Reply (#6) on December 2, 2013. Petitioner argued that he asked his counsel to file a motion to suppress contending that the entire case was the product of a warrantless and illegal arrest. Petitioner argued that, pursuant to court and county records, the residence was not his and he was arrested "while driving by a residence that was not owned, leased, nor rented by him."

This court notes that relief under 28 U.S.C. § 2255 is reserved for extraordinary situations. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996), *citing Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993). Accordingly, a petitioner may avail himself of relief under § 2255 only if he can "demonstrate that there are flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995). Based upon this standard, and the record in this case, this court agrees with the Government that Petitioner's claim is without merit and does not warrant an evidentiary hearing or relief under 28 U.S.C. § 2255.

Petitioner's claim is based upon his assertion that he was denied the effective assistance of counsel. "The Sixth Amendment to the Constitution accords criminal defendants the right to effective assistance of counsel." *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009). To succeed on a claim of ineffective assistance, a petitioner must prove: (1) his attorney's performance fell below an objective standard of

7

reasonableness; and (2) he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 678-88, 693 (1984); *Wyatt*, 574 F.3d at 457-58. With respect to the performance prong of the two-part test, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Wyatt*, 574 F.3d at 458, *quoting Strickland*, 466 U.S. at 689. A petitioner "must establish the specific acts or omissions of counsel that he believes constituted ineffective assistance" and the court then determines "whether such acts or omissions fall outside the wide range of professionally competent assistance." *Wyatt*, 574 F.3d at 458. Regarding the prejudice prong of the two-part test, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The Government is correct that, when the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, the Seventh Circuit requires the defendant to prove that the motion was meritorious. *See United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005).

This court first agrees with the Government that the record is clear that Petitioner made the decision to plead guilty. The transcript of the change of plea hearing held before Judge Bernthal shows that Petitioner, who was under oath, stated that he wanted to proceed with the change of plea and was satisfied with his counsel's representation. Petitioner expressed no reluctance to plead guilty or a desire to proceed with the previously scheduled suppression hearing. This court concludes that, because Petitioner

8

chose to enter a guilty plea, he cannot claim that his counsel was ineffective for allowing him to plead guilty rather than proceeding with the suppression hearing.[1]

This court also concludes that, in any case, Petitioner cannot meet his burden to show that the motion to suppress was meritorious. This court agrees with the Government that there was no chance of Petitioner prevailing on the Motion to Suppress he filed as there was clearly no merit to his arguments that his statements were made without proper *Miranda* warnings, were made under coercive circumstances, or were made as a result of his diminished intellectual capacity. In fact, Petitioner has not even argued that any of these grounds would have required suppression of his statements. Instead, Petitioner has claimed that his counsel should have raised an issue not raised in the district court or on appeal. Petitioner has argued that his counsel should have moved to suppress his statements under *Summers* and *Bailey*.

This court agrees with the Government that this argument lacks merit. In *Summers*, the defendant was descending the front steps of a residence when police officers came to execute a search warrant. *Summers*, 452 U.S. at 693. The police officers requested the defendant's assistance in gaining entry and detained him while they searched the premises. *Id.* After finding narcotics in the basement and ascertaining that the defendant owned the house, the police officers arrested him and searched his person. *Id.* The Supreme Court held that "[b]ecause it was lawful to require respondent to re-

---

[1] This court notes that the Government has correctly pointed out that Petitioner received a substantial benefit by pleading guilty and not proceeding with the suppression hearing. Petitioner received credit for acceptance of responsibility, which lowered his advisory guidelines range on Count 1 from 360 months to life to 262 to 327 months of imprisonment. This court, relying in part on Petitioner's showing of acceptance of responsibility, imposed a below guidelines sentence of 240 months for Count 1.

enter and remain in the house until evidence establishing probable cause to arrest him was found, his arrest and the search incident thereto were constitutionally permissible." *Id.* at 705-06. In *Bailey*, law enforcement officers followed the defendant's vehicle for about a mile, and for about five minutes, before pulling the vehicle over while other officers executed a search warrant at an apartment. *Bailey*, 133 S. Ct. at 1036. The defendant was subsequently charged with offenses based upon a gun and drugs found inside the apartment. *Id.* The Supreme Court concluded that *Summers* did not apply to this situation. *Id.* at 1042. The Court determined that the initial detention was improper, unless justified by some other rationale, because the defendant "was detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question." *Id.* at 1042-43. The Supreme Court recognized, however, that "[i]n closer cases courts can consider a number of factors to determine whether an occupant was detained within the vicinity of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id.* at 1042.

This court first agrees with the Government that Petitioner's counsel could not have been ineffective for failing to raise an argument based on *Bailey* because *Bailey* was decided on February 19, 2013, almost a full year after Petitioner filed his Motion to Suppress and days before the Seventh Circuit dismissed his appeal. *See United States v. Rezin*, 322 F.3d 443, 446-47 (7th Cir. 2003) (counsel cannot be deemed ineffective for failing to anticipate decisions made after the defendant's proceedings concluded).

In addition, this court agrees with the Government that Petitioner's arrest as he drove by his residence at the time the search warrant was executed was proper under *Summers* and *Bailey*. This court agrees that Petitioner's arrest was proper under *Summers* and also satisfied the *Bailey* requirement that the detainee be in the immediate vicinity of the searched premises.[2]

In his Reply, Petitioner stated that, pursuant to court and county records, the residence was not his and he was arrested "while driving by a residence that was not owned, leased, nor rented by him."[3] It appears that Petitioner is attempting to show that he had no connection to the premises searched so his arrest was improper. However, this argument is completely foreclosed by his testimony at the guilty plea hearing before Judge Bernthal that the premises searched was his "residence." Petitioner, who was under oath, agreed that it was accurate that "in May of last year you had a quantity of, of crack cocaine in your residence. You sold some of that before the search and the arrest was there. Had it not been for the search, you would have continued to process and sell it on your timetable, I guess I'd say."

This court concludes that, since Petitioner could not present a meritorious challenge to his arrest or to the statements he made following his arrest, Petitioner has not shown that his counsel's performance was deficient under the *Strickland* standard and has also not shown that he was prejudiced by his trial counsel's handling of the suppression

---

[2] This court notes that the Government has also made a persuasive argument that the police had probable cause to arrest Petitioner independent of the search warrant based on the search conducted on March 31, 2011, and the crack cocaine and revolver found on May 5, 2011 before Petitioner's arrest.

[3] Petitioner did not attach any "court and county records."

11

motion. Failure to raise a losing argument does not constitute ineffective assistance of counsel. *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996), *citing Strickland*, 466 U.S. at 687; *see also Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005).

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case. A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This court concludes that jurists of reason would not find it debatable whether Petitioner's Motion states a valid claim of the denial of a constitutional right.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1) is DENIED.

(2) Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.

(3) This case is terminated.

ENTERED this 9th day of May, 2014

s/Michael P. McCuskey
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE